**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. CR 22-0445-FMO-01 |
| Plaintiff, | ) | |
| v. | ) | **ORDER RE: APPLICATION FOR REVIEW OF DETENTION ORDER** |
| ARTHUR RAFFY ASLANIAN, | ) | |
| Defendant. | ) | |

Having reviewed and considered all the briefing filed with respect to defendant's Application for Review/Reconsideration of Order Setting Conditions of Release/Detention [] (Dkt. 54, "Application"), and the oral argument presented to the court on December 1, 2022, the court concludes as follows.

## BACKGROUND

On September 29, 2022, defendant Arthur Raffy Aslanian ("defendant") was charged in an indictment with one count of conspiracy to use an interstate commerce facility in the commission of murder-for-hire, and one count of use of interstate commerce facilities in the commission of murder-for-hire, both in violation of 18 U.S.C. § 1958(a).  (Dkt. 25, Indictment at 1-5).

Defendant filed the instant Application, seeking review of the Magistrate Judge's denial of his request to be released on bail pending trial, (Dkt. 54, Application), as well as a memorandum in support of the Application on November 16, 2022.  (Dkt. 53, Memorandum of Points and Authorities in Support of Arthur Raffy Aslanian's Application of Review of Detention Order and

Request for Hearing ("Memo")).   The government opposed defendant's request (Dkt. 56, Government's Memorandum in Opposition to Defendant Arthur Raffy Aslanian's Application for Review of Detention Order ("Opp.")), and the court heard oral argument on December 1, 2022.

## **LEGAL STANDARD**

A magistrate judge's release order is subject to de novo review by the district court.  See United States v. Koenig, 912 F.2d 1190, 1191-93 (9th Cir. 1990); 18 U.S.C. § 3145(a).  The district court need not "start over," but the court must "make its own 'de novo' determination of facts, whether different from or an adoption of the findings of the magistrate [judge]."  Koenig, 912 F.2d at 1193.

Under the Bail Reform Act of 1984, 18 U.S.C. §§ 3141, et seq., persons facing trial are to be released under the least restrictive condition or combination of conditions that will "reasonably assure" their appearance as required, and the safety of the community.   See 18 U.S.C. § 3142(c)(1); United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991).  As the Supreme Court noted in United States v. Salerno, 481 U.S. 739, 107 S.Ct. 2095 (1987), "[i]n our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception."  Id. at 755, 107 S.Ct. at 2105.  In other words, "[f]ederal law has traditionally provided that a person arrested for a non-capital offense shall be admitted to bail" and that "[o]nly in rare cases should release be denied." United States v. Townsend, 897 F.2d 989, 993-94 (9th Cir. 1990) (citations omitted).  Under the Bail Reform Act, bail is denied only when the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).

In determining whether there are "conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community[,]" the court must consider:  (1) the nature and circumstances of the charged offense; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community posed by the person's release.  18 U.S.C. § 3142(g).  The weight of the evidence against a defendant is the "least important of the various factors."  United States v. Hir, 517 F.3d 1081, 1090 (9th Cir. 2008).  "On

2

1  a motion for pretrial detention, the government bears the burden of showing by a preponderance
2  of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that
3  the defendant poses a danger to the community."  Gebro, 948 F.2d at 1121.  Any "doubts
4  regarding the propriety of release should be resolved in favor of the defendant." United States v.
5  Motamedi, 767 F.2d 1403, 1405 (9th Cir. 1985).

6                                        **DISCUSSION**

7         Based on the charge here, no presumption of detention applies, and the government's
8  typical burden remains in place.  See 18 U.S.C. § 3142(e); United States v. Hunter, 2022 WL
9  1240386, *3 (E.D. Mich. 2022) (holding "that [18 U.S.C.] § 1958 as charged here does not
10 constitute a crime of violence").  To overcome the presumption of release, the government must
11 show by clear and convincing evidence that no condition or combination of conditions can
12 reasonably assure the safety of the community, see United States v. Chen, 820 F.Supp. 1205,
13 1208 (N.D. Cal. 1992), or by a preponderance of the evidence that no condition or combination
14 of conditions can reasonably assure the defendant's appearance.  See Motamedi, 767 F.2d at
15 1405-07.

16        A.      Nature and Circumstances of the Offense and Weight of the Evidence.

17        The court will consider the nature and circumstances of the offense and the weight of the
18 evidence together.  As the government points out, the charged offenses are undoubtedly serious.
19 (See Dkt. 56, Opp. at 12).  As to the weight of the evidence, which is the "least important of the
20 various factors[,]" Hir, 517 F.3d at 1090, the government cites to statements by codefendant Sesar
21 Rivera ("Rivera") and recorded conversations between Rivera and a cooperating witness, and
22 between Rivera and defendant.  (See Dkt. 56, Opp. at 5-8, 14-15).  The government also relies
23 on the criminal complaint, but the usefulness of the complaint is minimal at best because such
24 documents regularly rely on hearsay statements, calling into question the reliability of this type of
25 evidence.  See, e.g., United States v. Cerda-Ramirez, 730 F.Appx. 449, 452 (9th Cir. 2018)
26 (holding that "the district court abused its discretion in admitting the criminal complaint and
27 accompanying affidavit" because they contained "facts subject to reasonable dispute" and

28

1    constituted adversarial, testimonial documents, and defendant was unable to cross-examine the

2    person who prepared the documents).

3         While the government admitted during oral argument that probable cause "was a little weak"

4    for its complaint in support of defendant's arrest, it noted that a video of defendant's reaction (e.g.,

5    his lack of surprise) to seeing a staged photo purporting to show the dead body of the intended

6    victim illustrated his approval of the murder. (See Dkt. 57, Exh. C, Video of September 15, 2022,

7    Meeting). Defendant, however, argues that the alleged plot was mostly driven by the cooperating

8    witness trying to work off two felony arrests, the undercover officer, and Rivera, who began

9    cooperating after the government arrested him for his involvement in the charged offense. (See

10   Dkt. 53, Memo at 2 & 8-9). For example, in excerpts of the recorded conversations highlighted

11   by defendant, the cooperating witness repeatedly urges Rivera to convince defendant to approve

12   the killings, saying, among other things: "I want to get paid"; "it can be done"; "if you need to talk

13   to him, talk to him tonight"; "get me the money, c[']mon foo[l] let's do it"; "I'll take care of it"; "the

14   sooner you do it the better[.]" (Dkt. 53-5, Exh. E, Transcript of 8/19/22 Meeting between CW and

15   Rivera at 1-2). Further, it appears that defendant tried to stop or at least delay the scheme, but

16   the government and cooperating witness pressed on, ignoring his directions. (See Dkt. 53, Memo

17   at 8-9); (Dkt. 1, Complaint at ¶¶ 62-64) (Rivera told the CW at an 8/24/22 meeting that "[Aslanian]

18   wants to postpone it for two months"); (id. at ¶ 82) ("RIVERA said that because the UC was

19   'sketchy' they did not want to move forward with the murder at that time and instead were going

20   to tell the CW that they wanted to wait 2 months to have the murder done."). Thus, while the

21   charged offense is serious, defendant has pointed to evidence that undermines or, at a minimum,

22   challenges the weight of the evidence. Considering the nature and circumstances of the offense

23   and the weight of the evidence, which is the least important factor, the court is persuaded that

24   these factors are neutral in determining whether to grant defendant's release.

25         B.    Defendant's History and Characteristics.

26         Defendant is 53 years old and was born and raised in this District. (Dkt. 53, Memo at 14).

27   He has no citizenship from any other country; he is married with four children between the ages

28   of 13 and 21; he and his wife own a home, a business, and various investment properties in the

community; "his whole family, including [his] brother, aunts, uncles, [and] cousins all live locally here in Los Angeles"; he is gainfully employed; he has a bachelor's degree; and he has no history of drug use or mental health conditions which could put him or others at risk.  (See id. at 14-15). Also, he has no prior criminal history and no wants, warrants, or failures to appear.  (Id. at 15). Finally, the outpouring of community support defendant has received since his arrest – including the appearance of at least 20 family members, friends, and supporters at the bail review hearing – underscores his very strong ties to the community.  See, e.g., Motamedi, 767 F.2d at 1408-09 (holding that government "failed to establish by a preponderance of the evidence that [defendant] presents a serious risk of flight" where, among other things, defendant "had been living in the Los Angeles area" for about nine years and defendant's immediate family members also lived in the area).

With regard to flight risk, Pretrial Services concluded that "risk of nonappearance concerns can be sufficiently mitigated by the posting of bond." (Pretrial Services Report, dated October 13, 2022, at 4).  While defendant faces a significant sentence if he is convicted, there are 14 individuals willing to sign surety affidavits in the amount of $100,000, and other sureties willing to post property and sign surety affidavits in different amounts.  (See Dkt. 53, Memo at 16-17).  The number of sureties and the significant amount of money and property they are willing to put forth not only demonstrate significant community support but also serve as a substantial incentive for defendant to appear at all court proceedings, and to comply with the conditions of his release.

Additionally, the court notes that codefendant Rivera – who stands accused of the same offenses and who, unlike defendant, has a criminal history – was released on a bond of just $20,000.  (See Dkt. 16, Court's Order of September 19, 2022); (Dkt. 31, Bond and Conditions of Release as to Sesar Rivera); (Dkt. 53, Memo at 12-13).  When the court inquired during the hearing as to why Rivera received such a low bail amount, given that, according to the complaint that initiated the action, Rivera was equally responsible for the alleged plot, (see Dkt. 1, Complaint at ¶ 17) ("The CW provided additional information about the people that RIVERA and 'Arthur' wanted killed."), the government's response was simply that he was cooperating.  But the fact that Rivera, a known gang member with a criminal history, may be cooperating, does not mean that

1  defendant should be denied bail altogether, especially where, as here, the complaint – which the

2  government admits "was a little weak" on probable cause – focuses far more on Rivera's

3  involvement in the underlying scheme than on defendant's.  (See, e.g., Dkt. 1, Complaint at ¶ 10)

4  ("the CW told police officers that [RIVERA] had recently approached the CW about murdering

5  someone on behalf of [defendant]"); (id. at ¶ 11) ("RIVERA asked the CW if the CW would kill the

6  targets in exchange for money. . . .  The CW told RIVERA that he was interested in carrying out

7  the murders"); (id. at ¶ 15) ("The CW understood RIVERA to mean that he wanted the Santa

8  Clarita target killed but did not want the Beverly Hills target to be killed. . . .  RIVERA continually

9  reassured the CW that the CW would be paid in full as soon as the job was done"); (id. at ¶ 49)

10  ("RIVERA said 'it's going to happen' but told the CW that he needed to speak with [defendant]

11  first"); (id. at ¶ 65) ("The CW indicated to RIVERA that the money can be washed in South Central

12  to which RIVERA replied, 'no.'  RIVERA told the CW, 'I got this, I'm going to take care of this.'

13  RIVERA stated that he knows somebody who owns a store.").  In short, this factor weighs strongly

14  in favor of release.

15         C.      The Nature and Seriousness of the Danger Posed by Defendant's Release.

16         The government's "'clear and convincing evidence' [burden] with respect to a defendant's

17  danger to the community required by § 3142(f)(2)(B) means something more than 'preponderance

18  of the evidence,' and something less than 'beyond a reasonable doubt.'"  United States v.

19  Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985) (citing Addington v. Texas, 441 U.S. 418, 431, 99

20  S.Ct. 1804, 1812 (1979)).  "To find danger to the community under this standard of proof requires

21  that the evidence support such a conclusion with a high degree of certainty."  Id.

22         Here, defendant has no criminal history and there is no evidence that defendant has ever

23  behaved violently.  Defendant's guns, which were not connected in any way to the charged

24  offense, have all been surrendered.  (Dkt. 53-8, Exh. H, Declaration of Melanie Killedjian and

25  Firearms Surrender Receipts).  Other than the two alleged intended victims of the offense, there

26  is no evidence that defendant would pose a danger to anyone else in the community.  While the

27  court is sensitive to the concerns of the alleged victims, (see Dkt. 62, Victim Impact Statements),

28  the court can fashion and impose conditions of release to mitigate the risk of danger.  Finally, as

defendant notes, the numerous sureties offering significant money and property bonds provide "powerful incentives to comply with the Court's conditions of release." (Dkt. 53, Memo at 19). In short, the government has failed to meet its clear and convincing burden with respect to this factor, which requires "that the evidence support such a conclusion with a high degree of certainty." Chimurenga, 760 F.2d at 405.

## CONCLUSION

The government has not met its burden to prove by a preponderance of the evidence that defendant poses a serious risk of flight, or by clear and convincing evidence that, if released, defendant would be a danger to any person or to the community. As noted earlier, under the Bail Reform Act, bail is denied only when the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Here, the court is persuaded that it can fashion a combination of conditions that will reasonably assure the appearance of the person as required and the safety of any other person and the community.

Based on the foregoing, IT IS ORDERED THAT:

1. Defendant's Application (**Document No. 54**) is **granted**.

2. The court sets a bond in the amount of $1,920,000: (a) an affidavit of surety in the amount of $500,000 with full deeding of the property located in Granada Hills by Aderineh Saralou; (b) 14 Affidavits of Surety (No Justification) in the amount of $100,000 each by Raffie Ruben Yeremian; Patrick Safarian; Hovik Abnoosi; Albert Poghosyan; Karinneh Aslanian; Michael Piranian; Sarkis Sam Demirjian; David Yeremian; Greg Karapetian; Aderineh Saralou; Steven Aslanian; Ara Babaian; Yvette Hartounian Aslanian; and Anita Aslanian; (c) and an Affidavit of Surety (No Justification) in the amount of $20,000 by Hagop Tujian.

3. Defendant shall be released to Pretrial Services upon execution and submission of the 15 affidavits of surety (no justification) referenced above. The full deeding of the property referenced above shall be completed no later than 21 days from the filing date of this Order.

4.   Defendant shall surrender all passports and travel documents to Pretrial Services no later than **December 7, 2022**, sign a Declaration re Passport and Other Travel Documents, and not apply for a passport or other travel document during the pendency of this case.

5.   Travel shall be restricted to the Central District of California unless prior permission is granted by Pretrial Services to travel to a specific other location.  Court permission is required for international travel.

6.   Defendant shall reside as approved by Pretrial Services and may not relocate without prior permission from Pretrial Services.

7.   Defendant shall maintain or actively seek employment and provide proof to Pretrial Services.

8.   Defendant shall avoid all contact, directly or indirectly (including by any electronic means), with any known victim or witness in the subject investigation or prosecution, including, but not limited to, M.Y. and S.E.

9.   Defendant shall not possess any firearms, ammunition, destructive devices, or other dangerous weapons.  In order to determine compliance, defendant agrees to submit to a search of his person and property by Pretrial Services, which may be in conjunction with law enforcement.

10.   Defendant shall participate in the Location Monitoring Program (with a bracelet and Global Positioning System (GPS)) and abide by all of the requirements of the program and any indicated restrictions, under the direction of the Supervising Agency.  Defendant shall pay all or part of the costs of the program based upon his ability to pay as determined by Pretrial Services.  Defendant shall be financially responsible for any lost or damaged equipment.  Defendant shall be restricted to his residence at all times except for:  employment, education, religious services, medical appointments and procedures for himself, his wife and/or his children, attorney visits, court-ordered obligations, and all activities related to the care and education of his minor children.  Dated this 4th day of December, 2022.

/s/
_____
Fernando M. Olguin
United States District Judge

attachment: proposed bond

## UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

**Case Name:** United States of America v. **Arthur Raffy Aslanian**          Case No.  CR 22-0445-FMO-1

☑ Defendant    ☐ Material Witness

Violation of Title and Section:    18 U.S.C. 1958 (a)

☐ Summons    ☐ Out of District    ☐ **UNDER SEAL**    ☐ Modified Date: _____

---

*Check only one of the five numbered boxes below and any appropriate lettered box (unless one bond is to be replaced by another):*

1. ☐ Personal Recognizance (*Signature Only*)

2. ☐ Unsecured Appearance Bond
   $ _____

3. ☐ Appearance Bond
   $ _____

(a). ☐ Cash Deposit (*Amount or %*) (*Form CR-7*)
   _____

(b). ☑ Affidavit of Surety Without
   Justification (*Form CR-4*) Signed by:
   $20,000 - Hagop Tujian
   _____

   14 sureties in the amount of $100,000 each:

   1) Raffie Ruben Yeremian; 2) Patrick Safarian;

   3) Hovick Abnoosi; 4) Albert Poghosyan;

   5) Karinneh Aslanian; 6) Michael Piranian

   7) Sarkis Sam Demirjian; 8) David Yeremian;

   9) Greg Karapetian; 10) Aderineh Saralo

   11) Steven Aslanian; 12) Ara Babaian;

   13) Yvette Hartounian Aslanian; 14) Anita Aslanian

(c). ☑ Affidavit of Surety With Justification
   (*Form CR-3*) Signed by:
   $500,000 by Aderineh Saralou
   _____
   _____

   ☑ With Full Deeding of Property:
   13338 Golden Valley Lane
   Granada Hills, CA  91344
   _____
   _____
   _____
   _____

4. ☐ Collateral Bond in the Amount of (*Cash or Negotiable Securities*):
   $ _____

5. ☐ Corporate Surety Bond in the Amount of:
   $ _____

Release Date: _____

☐ Released by: _____
   _____ / _____
   (*Judge / Clerk's Initials*)

☑ Release to U.S. Probation and Pretrial Services ONLY

☐ Forthwith Release
   _____
   _____

☑ All Conditions of Bond
   (*Except Clearing-Warrants Condition*) Must be Met and Posted by:
   12/25/2022

☐ Third-Party Custody Affidavit (*Form CR-31*)

☑ Bail Fixed by Court:
   FMO / gga
   (*Judge / Clerk's Initials*)

---

## PRECONDITIONS TO RELEASE

☐ The government has requested a Nebbia hearing under 18 U.S.C. § 3142(g)(4).

☐ The Court has ordered a Nebbia hearing under § 3142 (g)(4).

☐ The Nebbia hearing is set for _____ at _____ ☐ a.m. ☐ p.m.

## ADDITIONAL CONDITIONS OF RELEASE

In addition to the GENERAL CONDITIONS of RELEASE, the following conditions of release are imposed upon you:

☑ Submit to United States Probation and Pretrial Services supervision as directed by Supervising Agency.

☑ Surrender all passports and travel documents to Supervising Agency no later than December 7, 2022 , sign a Declaration re Passport and Other Travel Documents (*Form CR-37*), and do not apply for a passport or other travel document during the pendency of this case.

☑ Travel is restricted to Central District of California unless prior permission is granted by Supervising Agency to travel to a specific other location. Court permission is required for international travel as well as for any domestic travel if the defendant is in a Location Monitoring Program or as otherwise provided for below.

☑ Reside as approved by Supervising Agency and do not relocate without prior permission from Supervising Agency.

Defendant's Initials: _____    Date: _____

**Case Name:** United States of America v. Arthur Raffy Aslanian      **Case No.** CR 22-0445-FMO-1

■ Defendant    ☐ Material Witness

■ Maintain or actively seek employment unless excused by Supervising Agency for schooling, training, or other reasons approved by Supervising Agency.  Verification to be provided to Supervising Agency. ☐ Employment to be approved by Supervising Agency.

■ Avoid all contact, directly or indirectly (including by any electronic means), with any known victim or witness in the subject investigation or prosecution, ■ including but not limited to <u>M.Y. and S.E.</u>

_____ ; ☐ except for _____ .

☐ Avoid all contact, directly or indirectly (including by any electronic means), with any known codefendants except in the presence of counsel. Notwithstanding this provision, you may have contact with the following codefendants without your counsel present:

_____ .

■ Do not possess any firearms, ammunition, destructive devices, or other dangerous weapons. ☐ Surrender any such item as directed by Supervising Agency by _____ and provide proof to Supervising Agency. ■ In order to determine compliance, you agree to submit to a search of your person and property by Supervising Agency, which may be in conjunction with law enforcement.

☐ Do not use or possess any identification, mail matter, access device (including, but not limited to, credit and debit cards), or any identification-related material other than in your own legal or true name without prior permission from Supervising Agency.

     ☐ In order to determine compliance, you agree  submit to a search of your person and property by Supervising Agency, which may be in conjunction with law enforcement.

☐ Do not engage in telemarketing.

☐ Do not sell, transfer, or give away any asset valued at $ _____ or more without notifying and obtaining permission from the Court, except _____ .

☐ Do not engage in tax preparation for others.

☐ Do not use alcohol. ☐ Submit to alcohol testing. If directed to do so, participate in outpatient treatment as approved by Supervising Agency.  Testing may include any form of prohibited-substance screening or testing. You must pay all or part of the costs for testing based upon your ability to pay as determined by Supervising Agency.

☐ Do not use or possess illegal drugs or state-authorized marijuana. ☐ Submit to drug testing.  Testing may include any form of prohibited-substance screening or testing.  You must pay all or part of the costs for testing based upon your ability to pay as determined by Supervising Agency.  If directed to do so, participate in outpatient treatment as approved by Supervising Agency.

     ☐ In order to determine compliance, you agree to submit to a search of your person and property by Supervising Agency, which may be in conjunction with law enforcement.

☐ Do not use for purposes of intoxication any controlled substance analogue as defined by federal law or any street, synthetic, or designer psychoactive substance capable of impairing mental or physical functioning more than minimally, except as prescribed by a medical doctor.

☐ Participate in residential substance abuse treatment as directed by Supervising Agency. You must pay all or part of the costs of treatment based upon your ability to pay as determined by Supervising Agency.  ☐ **Release to Supervising Agency only.**

☐ Participate in mental health treatment, which may include evaluation, counseling, or treatment as directed by Supervising Agency.  You must pay all or part of the costs based upon your ability to pay as determined by Supervising Agency.

Defendant's Initials: _____      Date: _____

**Case Name:** United States of America v. **Arthur Raffy Aslanian**          Case No.  CR 22-0445-FMO-1

☒ Defendant          ☐ Material Witness

☒ Participate in the Location Monitoring Program marked below and abide by all of the requirements of the program and any indicated restrictions, under the direction of the Supervising Agency.  You must pay all or part of the costs of the program based upon your ability to pay as determined by the Supervising Agency.  You are financially responsible for any lost or damaged equipment.

**1.  Location Monitoring Restrictions (Select One)**

☐ **Location Monitoring only - no residential restrictions**

☐ **Curfew**: Curfew requires you to remain at home during set time periods. **(Select One)**
    ☐ As directed by Supervising Agency; **or**
    ☐ You are restricted to your residence every day from _____ to _____

☒ **Home Detention**: Home detention requires you to remain at home at all times except for employment, education, religious services, medical needs or treatment, attorney visits, court appearances and obligations, essential needs, and procedures for himself, his wife and/or his childre , all of which must be preapproved by the Supervising Agency.

☐ **Home Incarceration:** Home Incarceration requires you to be at home 24 hours a day except for medical needs or treatment, attorney visits, court appearances or obligations, and _____, all of which must be preapproved by Supervising Agency.

**2.  Location Monitoring Technology (Select One)**

☐ Location Monitoring technology at the discretion of the Supervising Agency.  (If checked, skip to 3)

☒ Location Monitoring **with** an ankle monitor (Select one below)
    ☐ at the discretion of the Supervising Agency **or**
    ☐ Radio Frequency (RF) **or**
    ☒ Global Positioning System (GPS)

**or**

☐ Location Monitoring **without** an ankle monitor (Select one below)
    ☐ at the discretion of the Supervising Agency **or**
    ☐ Virtual/Biometric (smartphone required to participate) **or**
    ☐ Voice Recognition (landline required to participate)

**3.  Location Monitoring Release Instructions (Select One)**

☒ Release to Supervising Agency only **or** ☐ Enroll in the location monitoring program within 24 hours of release.

☐ You are placed in the third-party custody (*Form CR-31*) of _____ .
☐ Clear outstanding ☐ warrants or ☐ DMV and traffic violations and provide proof to Supervising Agency within _____ days of release from custody.

Defendant's Initials: _____   Date: _____

**Case Name:** United States of America v. **Arthur Raffy Aslanian**                    Case No.  CR 22-0445-FMO-1

■ Defendant          ☐ Material Witness

☐ Possess and use only those digital devices, screen usernames, email accounts, social media accounts, messaging applications
   and cloud storage accounts, as well as any passwords or passcodes for all such digital devices and accounts, that you disclosed
   to Supervising Agency upon commencement of supervision.  You must disclose any new devices, accounts, application, passwords,
   or passcodes to Supervising Agency prior to the first use.  A digital device is any electronic system or device that can access, view,
   obtain, store, or transmit digital data. ☐  In order to determine compliance, you agree to submit to a search of your person and
   property, including digital devices, by Supervising Agency, which may be in conjunction with law enforcement.

☐ All digital devices will be subject to monitoring by Supervising Agency.  You must comply with the rules and regulations
   of the Computer Monitoring Program and must pay the cost of the Computer Monitoring Program.

☐ Do not use or possess more than one virtual currency wallet/account, and that one wallet/account must be used for all virtual
   currency transactions.  Do not obtain or open a virtual currency wallet/account without prior approval of Supervising Agency.
   You must disclose all virtual currency wallets/accounts to Supervising Agency when supervision starts and must make them available
   to Supervising Agency upon request.  You may use or possess only open public blockchain virtual currencies and are prohibited from
   using private blockchain virtual currencies unless prior approval is obtained from Supervising Agency. ☐  In order to determine
   compliance, you agree to submit to a search of your person and property, including computer hardware and software, which may
   be in conjunction with law enforcement.

### Cases Involving a Sex-Offense Allegation

☐ Possess and use only those digital devices, screen usernames, email accounts, social media accounts, messaging applications
   and cloud storage accounts, as well as any passwords or passcodes for all such digital devices and accounts, that you disclosed
   to Supervising Agency upon commencement of supervision.  You must disclose any new devices, accounts, application, passwords, or
   passcodes to Supervising Agency prior to the first use.  A digital device is any electronic system or device that can access, view, obtain,
   store, or transmit visual depictions of sexually explicit conduct involving children. ☐  In order to determine compliance, you agree to
   submit to a search of your person and property, including digital devices, by Supervising Agency, which may be in conjunction with
   law enforcement.

☐ All digital devices will be subject to monitoring by Supervising Agency.  You must comply with the rules and regulations
   of the Computer Monitoring Program and must pay the cost of the Computer Monitoring Program.

☐ Do not associate or have verbal, written, telephonic, electronic, or any other communication with any person under the age of 18
   except in the presence of the parent or legal guardian of the minor after you have notified the parent or legal guardian of the
   pending charges or convictions involving a sex offense and only as authorized by Supervising Agency

☐ Do not enter or loiter within 100 feet of schoolyards, parks, public swimming pools, playgrounds, youth centers, video arcade
   facilities, amusement and theme parks, or other places frequented by persons under the age of 18 and only as authorized to do so
   by Supervising Agency.

☐ Do not be employed by, affiliated with, own, control, or otherwise participate directly or indirectly in the operation of any daycare
   facility, school, or other organization dealing with the care, custody, or control of children under the age of 18.

☐ Do not view or possess child pornography or child erotica, including but not limited to pictures, photographs, books, writings,
   drawings, or videos depicting or describing child pornography. ☐  In order to determine compliance, you agree to submit to a
   search of your person and property, including computer hardware and software, by Supervising Agency, which may be in conjunction
   with law enforcement..

Defendant's Initials: _____          Date: _____

**Case Name:** United States of America v. **Arthur Raffy Aslanian**              Case No.  CR 22-0445-FMO-1

■ Defendant    ☐ Material Witness

☐ Other conditions:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

# GENERAL CONDITIONS OF RELEASE

I will appear in person in accordance with any and all directions and orders relating to my appearance in the above entitled matter as may be given or issued by the Court or any judicial officer thereof, in that Court or before any Magistrate Judge thereof, or in any other United States District Court to which I may be removed or to which the case may be transferred.

I will abide by any judgment entered in this matter by surrendering myself to serve any sentence imposed and will obey any order or direction in connection with such judgment as the Court may prescribe.

I will immediately inform United States Probation and Pretrial Services and my counsel of any change in my contact information, including my residence and telephone number, including cell phone number, so that I may be reached at all times.

I will not commit a federal, state, or local crime during the period of release.  I will inform Supervising Agency of law enforcement contact within 72 hours of being arrested or questioned by a law enforcement officer.

I will not intimidate any witness, juror, or officer of the court or obstruct the criminal investigation in this case. Additionally, I will not tamper with, harass, or retaliate against any alleged witness, victim, or informant in this case. I understand that if I do so, I may be subject to further prosecution under the applicable statutes.

I will cooperate in the collection of a DNA sample under 42 U.S.C. § 14135a.

Defendant's Initials: _____    Date: _____

**Case Name:** United States of America v. **Arthur Raffy Aslanian**            Case No.  CR 22-0445-FMO-1

■ Defendant            ☐ Material Witness

## ACKNOWLEDGMENT OF DEFENDANT/MATERIAL WITNESS

As a condition of my release on this bond, pursuant to Title 18 of the United States Code, I have read or have had interpreted to me and understand the general conditions of release, the preconditions, and the additional conditions of release and agree to comply with all conditions of release imposed on me and to be bound by the provisions of Local Criminal Rule 46-6.

Furthermore, it is agreed and understood that this is a continuing bond (including any proceeding on appeal or review) which will continue in full force and effect until such time as duly exonerated.

I understand that violation of any of the general and/or additional conditions of release of this bond may result in a revocation of release, an order of detention, and a new prosecution for an additional offense which could result in a term of imprisonment and/or fine.

I further understand that if I fail to obey and perform any of the general and/or additional conditions of release of this bond, this bond may be forfeited to the United States of America. If said **forfeiture is not set aside, judgment may be summarily entered in this Court against me and each surety, jointly and severally, for the bond amount, together with interest and costs. Execution of the judgment may be issued or payment secured as provided by the Federal Rules of Criminal Procedure and other laws of the United States, and any cash or real or personal property or the collateral previously posted in connection with this bond may be forfeited.**

_____          _____          _____
*Date*                                          *Signature of Defendant / Material Witness*                    *Telephone Number*

_____
*City and State (**DO NOT INCLUDE ZIP CODE**)*

☐ **Check if interpreter is used**: I have interpreted into the _____ language this entire form
    and have been told by the defendant that he or she understands all of it.

_____          _____
*Interpreter's Signature*                                                      *Date*

Approved: _____          _____
                *United States District Judge / Magistrate Judge*                    *Date*

If cash deposited: Receipt # _____ for $ _____

(This bond may require surety agreements and affidavits pursuant to Local Criminal Rule 46.)

Defendant's Initials: _____     Date: _____